1  Anthony J. Dain (Bar No. 98947)
   anthony.dain@procopio.com
2  Procopio, Cory, Hargreaves
    & Savitch LLP
3  525 B Street, Suite 2200
   San Diego, CA  92101
4  Telephone: 619.238.1900
   Facsimile: 619.235.0398
5
   Attorneys for Defendant, RePET, Inc., a California
6  corporation

7

8              UNITED STATES DISTRICT COURT

9         FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                   EASTERN DIVISION

| | |
|---|---|
| 11  NANJING ELBLE ENVIRONMENTAL<br>PROTECTION TECHNOLOGY CO.,<br>12  LTD., | Case No. 5:16-cv-2030-RSWL-PS |
| 13          Plaintiff, | **REPET, INC.'S OPPOSITION<br>TO APPLICATION FOR WRIT<br>OF ATTACHMENT** |
| 14  v. | Date:              November 15, 2016 |
| 15  REPET, INC., a California corporation; and<br>16  DOES 1-20, inclusive, | Time:              10:00 a.m.<br>Courtroom:      4, 3rd Floor<br>Magistrate Judge Sheri Pym |
| 17          Defendants. | Judge:    Ronald S.W. Lew<br>Complaint Filed:  September 23,<br>18                      2016 |

19

20

21

22

23

24

25

26

27

28

DOCS 124629-000002/2718661.1

1    Defendant RePET, Inc. ("RePET") respectfully submits the following Opposition to

2    Plaintiff Nanjing Elble Environmental Protection Technology, Co., Ltd.'s ("Nanjing Elble")

3    Application for Writ of Attachment ("Writ Application").

4    **I.    INTRODUCTION**

5    Nanjing Elble's Writ Application fails for numerous reasons.  First, the Writ Application is

6    supported only by the Declaration of Shuwei Zhao, who inaccurately claims to be Nanjing Elble's

7    Chief Executive Officer and who provides no indication that he has sufficient personal knowledge

8    to testify competently about the facts stated in his declaration.  Second, the financial information

9    available to RePET following the resignation of Shubin Zhao[1] shows that RePET fully paid for

10   seven of the ten invoices from Nanjing Elble.  For the remaining three invoices, Nanjing Elble has

11   provided no evidence from its bank records to show the absence of payments, even though the

12   sales invoices identify the specific Nanjing Elble accounts in which Nanjing Elble would have

13   deposited payments from RePET.  Finally, Nanjing Elble's Writ Application improperly demands

14   RePET to turnover $616,369.49 of intangible funds to the levying officer, when no legal authority

15   exists for such a demand.  As set forth below, Nanjing Elble's Writ Application should be denied.

16   **II.    FACTUAL BACKGROUND**

17   Plaintiff Nanjing Elble was formed by businessman Shubin Zhao on April 30, 2007.

18   Declaration of Jianwen Wang ("Wang Decl."), ¶ 8, 14, Exhibit D-1.  Nanjing Elble's Articles of

19   Association ("Articles") identify Shubin Zhao as Nanjing Elble's sole shareholder.  *Id.* at ¶¶ 14-15.

20   Nanjing Elble identified Shubin Zhao as Nanjing Elble's executive director, legal representative,

21   and sole shareholder when it applied for and obtained its business license from the China

22   Administration of Industry and Commerce on June 2, 2007.  *Id*. at ¶¶ 8-10, Exhibits B-1 and B-2.

23   Shubin Zhao still currently acts as Nanjing Elble's executive director, legal representative, and sole

24   shareholder.  *Id.* at ¶¶ 3-6.  Shubin Zhao's brother, Shuwei Zhao, acts as the company's

25   "supervisor."  *Id.* at ¶¶ 3, 6-7; Chuang Decl. at ¶ 3.  According to its own Articles, Nanjing Elble

26

27   [1] Shubin Zhao is Shuwei Zhao's brother.  Declaration of Jennifer Chuang ("Chuang Decl.") at ¶ 3.
At all relevant times, Shubin Zhao has acted as Nanjing Elble's founder, executive director, legal
representative, and sole shareholder.  Wang Decl. at ¶¶ 3-6, 8-10. He also acted as RePET's former

28   founder, CEO, and CFO from April 1, 2009 to August 28, 2014.  Chuang Decl. at ¶¶ 4-6.

1

1    prohibits its supervisor from simultaneously serving as the company's executive director, general

2    manager, deputy general manager, or head of finance.  Wang Decl. at ¶ 17.

3         After forming Nanjing Elble, Shubin Zhao subsequently formed RePET on or about April

4    1, 2009.  Chuang Decl. at ¶ 4.  From the outset of RePET's formation, Shubin Zhao acted as

5    RePET's Chief Executive Officer and Chief Financial Officer.  Chuang Decl. at ¶¶ 5, 7, Exhibit A

6    at pp. 1, 4.  Shubin Zhao maintained those titles until his resignation as Chief Financial Officer on

7    August 28, 2014, and his resignation as Chief Executive Officer on October 24, 2014.  Chuang

8    Decl. at ¶¶ 6-10, Exhibit B at p. 2, Exhibit C at p. 2, Exhibit D at p. 1, Exhibit E.  Additionally,

9    from RePET's formation until in or about August 2014, Shubin Zhao had signature authority and

10   control over RePET's bank accounts.  Chuang Decl. at ¶¶ 7, 12, Exhibit A at p. 6.  RePET relied

11   upon Shubin Zhao to act in good faith, to fulfill his fiduciary duties of care and loyalty to RePET,

12   and in particular, to conduct the business of RePET and manage RePET's accounts, records, and

13   finances in the best interests of RePET and its shareholders.  Chuang Decl. at ¶ 13.

14        In mid-2014, a new investor purchased a controlling interest in RePET, and started to

15   become involved in RePET's management.  Chuang Decl. at ¶ 14.  The new investor began to

16   discover – and began questioning Shubin Zhao about – irregularities in RePET's books and

17   records.  Chuang Decl. at ¶ 15.  Consequently, Shubin Zhao left RePET in October 2014.  Chuang

18   Decl. at ¶ 16.  Following the time of Shubin Zhao's departure from RePET, RePET's management

19   reviewed and audited RePET's finances, discovering that Shubin Zhao engaged in widespread

20   fraud, embezzlement, breaches of fiduciary duty, and conversion of RePET's funds and property.

21   Chuang Decl. at ¶ 17.  This discovery led RePET to file a lawsuit against Shubin Zhao on

22   November 10, 2015, which is currently pending before this Court as Case No. 5:15-cv-02315-

23   VAP-SP.  Chuang Decl. at ¶ 18.

24        Nanjing Elble now claims that RePET owes it $616,369.49 for amounts unpaid on ten

25   invoices for machinery and equipment, based on a declaration of Shubin Zhao's brother, Shuwei

26   Zhao.  All but one of these invoices (Invoice No. YB141205) were entered between May 17, 2013,

27   and August 15, 2014, a period during which Shubin Zhao served as both CEO and CFO of RePET

28   and as the executive director, legal representative, and sole shareholder of Nanjing Elble.  Chuang

2

5:16-CV-2030

1    Decl. at ¶¶ 4, 16; Wang Decl. at ¶¶ 3-6, 8-10.   Contrary to Shuwei Zhao's unfounded and

2    unsupported assertions, RePET's financial records confirm RePET made payments to Nanjing

3    Elble of at least $464,347.70 during the time period in question, as payment for the last seven sales

4    invoices cited by Plaintiff.  Chuang Decl. at ¶ 19.  RePET may also have paid the full amount for

5    the first three sales invoices cited by Plaintiff, but it lacks sufficient information to determine

6    whether payments were made. Chuang Decl. at ¶ 20.  Shubin Zhao, in his position as CEO and

7    CFO of RePET, controlled RePET's finances on the dates when these invoices were issued.

8    RePET needs to engage in discovery into Shubin Zhao's and Nanjing Elble's financial records to

9    provide a more informed response to Plaintiff's allegations with respect to the payment of these

10   three remaining invoices.  Chuang Decl. at ¶ 29.

11   **III.    LEGAL STANDARD**

12       Prejudgment attachment is a "harsh remedy," in that an alleged debtor loses control of its

13   property before a claim against it has been adjudicated.  *In re Ryan*, 369 B.R. 536, 547 (N.D. Cal.

14   2007), *aff'd* 310 Fed. Appx. 980, 2009 WL 249671 (9th Cir. 2009).  Therefore, the requirements

15   for the issuance of a writ of attachment are strictly construed against the applicant.  *Blastrac, N.A.*

16   *v. Concrete Sols. & Supply*, 678 F. Supp. 2d 1001, 1004 (C.D. Cal. 2010).

17       The burden is on the applicant to establish, among other things, the probable validity of the

18   claim upon which the attachment is based.   *Id.* (citing California Code of Civil Procedure

19   ("C.C.P.") § 484.090(a).  To establish the "probable validity" component, the plaintiff must show it

20   is more likely than not it will obtain a judgment against the defendant. *Id.* (citing C.C.P. §

21   481.190).   In determining the probable validity of a claim where the defendant makes an

22   appearance, the court must consider the relative merits of the position of each party and make a

23   determination of the probable outcome of the litigation.  *Id.* (citing *Loeb & Loeb v. Beverly Glen*

24   *Music, Inc.*, 166 Cal. App. 3d 1110, 1120 (1985)).  "Thus, it is not enough for the plaintiff to make

25   out a prima facie case for breach of contract; rather, the plaintiff must also show that the defenses

26   raised are "less than fifty percent likely to succeed."  *Id.* (quoting *Pet Food Express, Ltd. v. Royal*

27   *Canin USA Inc.*, 2009 WL 2252108, at *5 (N.D. Cal. 2009).  If an applicant fails to rebut a

28   factually-supported defense that would defeat its claims, the applicant has not established probable

5:16-CV-2030

1    validity.  *Blastrac, N.A.*, 678 F. Supp. 2d at 1004.

2    **IV.      NANJING ELBLE'S WRIT APPLICATION SHOULD BE DENIED**

3              **A.      Nanjing Elble Has Not Supported Its Writ Application with Sufficient
                         Evidence, Because the Supporting Declaration of Shuwei Zhao Fails to
4                        Establish That He Had the Requisite Personal Knowledge.**

5              The only support for Nanjing Elble's Writ Application comes from the declaration of

6    Shuwei Zhao.  However, there is no reason to believe that Shuwei Zhao could testify competently

7    to the statements he makes in his declaration.  First, he does not describe any basis for his having

8    personal knowledge of the statements in his declaration, aside from his contention that he is

9    Nanjing Elble's Chief Executive Officer.  Second, Nanjing Elble's records on file with the Chinese

10   government demonstrate that Shuwei Zhao is not actually the company's Chief Executive Officer,

11   but is instead the company's supervisor.  Third, Nanjing Elble's Articles reveal that the company

12   supervisor cannot be the Chief Executive Office, nor can the supervisor be responsible for the daily

13   management of the company.  Although there are several other individuals at Nanjing Elble who

14   could potentially testify competently about the transactions at issue, Nanjing Elble chose instead to

15   rely on the declaration of an individual whose assertions simply cannot legally form the basis of

16   Nanjing Elble's Writ Application.

17             The facts stated in an affidavit filed in support of an application for writ of attachment

18   "shall be set forth with particularity."  C.C.P. § 482.040.  "Except where matters are specifically

19   permitted by this title to be shown by information and belief, each affidavit shall show

20   affirmatively that the affiant, if sworn as a witness, can testify competently to the facts stated

21   therein."  *Id.*  "At a minimum, this means that the affiant or declarant must show actual, personal

22   knowledge of the relevant facts, rather than the ultimate facts commonly found in pleadings, and

23   such evidence must be admissible and not objectionable."  *Hamilton Beach Brands, Inc. v. Metric*

24   *& Inch Tools, Inc.*, 614 F. Supp. 2d 1056, 1063 (C.D. Cal. 2009).  A proper foundation must be

25   established for declarations and affidavits showing the declarant had personal knowledge of each

26   fact stated.  *Generale Bank Nederland, N.V. v. Eyes of the Beholder Ltd.*, 61 Cal. App. 4th 1384,

27   1391-92 (1998) (declarations by "bank officer" did not show personal knowledge of transactions

28   with bank); *cf. Heritage Bank of Commerce v. Garner*, No. H037220, 2012 WL 6560061, at *8

                                                    4

1    (Cal. Ct. App. Dec. 17, 2012) (reasonable to infer from declarant's statements regarding his

2    position at the bank and responsibilities with regard to administration and collection of the loan

3    that he had the requisite personal knowledge of the material facts set forth in his declaration and of

4    the attached exhibits).

5        Shuwei Zhao has not established – nor can he establish – that he had personal knowledge of

6    the alleged facts he asserts.  Nowhere in his declaration does he show that he managed the

7    transactions at issue, or even that he oversaw them.  Nor does he show that he understood how the

8    company's business records were kept.  Unlike the bank officer in *Heritage Bank of Commerce*,

9    *supra*, whose declaration described his responsibilities with regard to administration and collection

10   of the loan at issue, Shuwei Zhao simply states that he made his declaration based on his personal

11   knowledge by virtue of his title as Chief Executive Officer.  Doc. 10-1, ¶ 1; *cf*. *Heritage Bank of

12   Commerce*, 2012 WL 6560061, at *8.  Indeed, Shuwei Zhao's claimed basis of personal knowledge

13   is more akin to the "bank officer" in *Generale Bank Nederland*, where the court sustained an

14   objection to a declaration's foundation for lack of personal knowledge of the transactions

15   described.  Doc. 10-1, ¶ 1; *see Generale Bank Nederland,* 61 Cal. App. 4th at 1391-92.

16       Moreover, despite his claim that he is Nanjing Elble's Chief Executive Officer, Nanjing

17   Elble's corporate records show that it is Shuwei Zhao's brother, Shubin Zhao (the former founder,

18   CEO, and CFO of RePET), who serves as Nanjing Elble's executive director, legal representative,

19   and sole shareholder.  *Id*. at ¶¶ 3-10.  Shuwei Zhao, on the other hand, actually serves as the

20   company's supervisor.  *Id*. at ¶ 7.  As stated in the company's Articles, Nanjing Elble's supervisor

21   cannot also be its executive director, general manager, deputy manager or act as personnel

22   responsible for the financial affairs of the company.  *Id*., ¶ 17.  In other words, because Zhao

23   Shuwei is currently the supervisor, he cannot also be the executive director of the company.  Thus,

24   Nanjing Elble's own corporate records, on file with the Chinese government, show that Shuwei

25   Zhao does not hold the position he claims to hold in his declaration.  This fact further undermines

26   the credibility of the statements he makes in his declaration.

27       Moreover, Shuwei Zhao's actual title of supervisor places him in a position such that he

28   could not have personal knowledge of the various transactions he discusses in his declaration.

5

5:16-CV-2030

Nanjing Elble's Articles of Association specify that the company has an executive director, who employs a general manager and a deputy general manager. Wang Decl., ¶ 14, Exhibit D-1 through D-7, Articles 17, 21. According to the Articles, it is the general manager who is in charge of organizing and leading "the daily production, technology and management of the Sole Proprietorship." *Id.*, ¶ 14 Exhibit D-1 through D-7, Article 21. Further, the deputy general manager is responsible for assisting the general manager with the management of the company, and for fulfilling the general manager's responsibilities when the general manager is absent. *Id.* at Exhibit D-1 through D-7, Article 21. The company also has a chief accountant and an auditor, both of whom are engaged by the general manager. *Id.* at Exhibit D-1 through D-7, Article 25. The company's Articles list six duties for the supervisor position, but none of them involve the daily management or oversight of sales contracts. *Id.* at Exhibit D-1 through D-7, Article 31.

Thus, although Nanjing Elble's executive director, general manager, deputy general manager, chief accountant, or auditor could potentially have personal knowledge of the transactions at issue, Nanjing Elble chose to rely instead on the declaration of one individual within the company who could not have personal knowledge of those transactions. "If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust." Cal. Evid. Code § 412. The court can properly consider a party's failure to introduce expected evidence in ruling on a writ application. *Altisource Sols., Inc. v. Quick Home Restore*, No. E055902, 2014 WL 308846, at *5 (Cal. Ct. App. Jan. 29, 2014) (citing Cal. Evid. Code § 412). Here, Nanjing Elble had the ability to produce competent evidence from an employee with personal knowledge regarding the contracts at issue. Nanjing Elble's failure to do so should weigh against the less reliable testimony of Shuwei Zhao. Shuwei Zhao's statements cannot support Nanjing Elble's Writ Application because Shuwei Zhao is not the Chief Executive Officer of Nanjing Elble, and he has provided no other basis upon which the court could conclude he has the requisite personal knowledge to support Nanjing Elble's Writ Application. Accordingly, given Shuwei Zaho's lack of demonstrated personal knowledge of the facts alleged in his declaration, and Nanjing Elble's failure to provide competent testimony of the personal knowledge of another witness, the Court

6

1   should deny Nanjing Elble's Writ Application.

2            **B.**        **Nanjing Elble Has Not Shown the Probable Validity of Its Claim, Since the**
3                    **Available Bank Records Shows that RePET, in Fact, Did Pay for the Goods**
                 **Delivered.**

4          As discussed above, Nanjing Elble has the burden to establish the probable validity of its

5   breach of contract claim against RePET.  *See* C.C.P. § 484.090(a).  This means Nanjing Elble must

6   show that it is more likely than not that it will obtain a judgment against RePET.  C.C.P. § 481.190.

7   Nanjing Elble must also show that the defenses raised by RePET are "less than fifty percent likely

8   to succeed."  *Blastrac, N.A. v. Concrete Sols. & Supply*, 678 F. Supp. 2d 1001, 1004 (C.D. Cal.

9   2010).  For a breach of contract action, Nanjing Elble must prove the probable validity of each of

10  the following elements: (1) the existence of a contract, (2) plaintiff's performance or excuse for

11  non-performance, (3) defendant's breach, and (4) damages to plaintiff therefrom.  *See Acoustics,*

12  *Inc. v. Trepte Construction Co.*, 14 Cal. App. 3d 887, 913 (1971).  Here, Nanjing Elble fails to

13  prove either the probable validity of RePET's breach by failure to pay or the probable validity of

14  Nanjing Elble's damages resulting therefrom.

15         Despite Shuwei Zhao's repeated contentions, without personal knowledge that the full

16  amounts billed in the invoices remain unpaid, RePET's financial documents confirm that RePET

17  did, in fact, pay for machinery and equipment that Nanjing Elble delivered.  The final seven

18  invoices cited by Nanjing Elble in its Writ Application total $424,347.70.  During the time period

19  of those seven invoices, RePET paid Nanjing Elble a total of $464,347.70.  Chuang Decl., ¶19.

20  RePET's financial documents confirm payment in full of the following Nanjing Elble invoices:

21       •  **Invoice No. YB130824:**  Nanjing Elble claims that RePET owes a total of **$49,956.00**

22           from this invoice dated August 24, 2013.  However, RePET made an online wire

23           transfer to Nanjing Elble on October 9, 2103, in the amount of **$49,956.00**.  Chuang

24           Decl. at ¶ 21, Exhibit F.  Thus, RePET paid Nanjing Elble the exact amount billed in

25           Invoice No. YB130824.

26       •  **Invoice Nos. YB140110, YB140123-01, YB140123-02, YB140616:**  Nanjing Elble

27           claims that RePET owes $102,248.00, $20,640.00, $10,860.00, and $62,396.00,

28           respectively, from these invoices spanning between January 10, 2014, and June 16,

5:16-CV-2030

2014.  Together, those invoices total **$196,143.00**.  However, RePET made payments to Nanjing Elble of $9,719.80, $52,000.00, $30,000.00, $30,000.00, $30,000.00, and $40,856.00 between December 17, 2013, and June 17, 2014, for a total of **$192,575.80**.  Chuang Decl. at ¶ 22, Exhibit G, Exhibit H, Exhibit I.  The **remaining $3,567.20** was reconciled as part of an accounts receivable offset from amounts owed by Nanjing Elble to RePET.  Chuang Decl. at ¶ 23.  Thus, after the six payments described above and the offset reconciliation against amounts owed by Nanjing Elble, RePET owed nothing further to Nanjing Elble for Invoice Nos. YB140110, YB140123-01, YB140123-02, and YB140616.

- **Invoice No. YB140815-1:**  Nanjing Elble claims that RePET owes a total of **$84,601.30** from this invoice dated August 15, 2014.  However, following Shubin Zhao's resignation as RePET's CFO, RePET entered a credit agreement with Bank SinoPac to wire **$84,621.30** to Nanjing Elble (through its export agent, Jiangsu) on September 15, 2014.  Chuang Decl. at ¶ 24, Exhibit J.  Thus, RePET paid Nanjing Elble the exact amount billed in Invoice No. YB140815-1.

- **Invoice No. YB141205:**  Nanjing Elble claims that RePET owes a total of **$93,647.00** from this invoice dated December 5, 2014.  However, RePET entered a credit agreement with Bank SinoPac to wire $22,000.00 to Nanjing Elble (through its export agent, Jiangsu) on October 24, 2014.  Chuang Decl. at ¶ 25, Exhibit K.  It subsequently entered another credit agreement with Bank SinoPac to wire $71,667.00 to Nanjing Elble (through its export agent, Jiangsu) on January 12, 2015.  Chuang Decl. at ¶ 26, Exhibit L.  Together these two wire payments total **$93,667.00**. Thus, RePET paid Nanjing Elble more than the amount billed in Invoice No. YB141205.

- In addition to the payments made for the amounts billed in above-identified invoices from August 24, 2013, to December 5, 2014, RePET made a **$20,000.00** payment to Nanjing Elble on July 22, 2014.  Chuang Decl. at ¶ 27, Exhibit M.

Altogether, RePET's financial records show that RePET paid Nanjing Elble a total of **$464,347.70** for the invoices spanning from August 24, 2013, to December 5, 2014.  Chuang Decl. at ¶ 28,

8

5:16-CV-2030

Exhibit N.

The remaining $152,021.79 of the total amount for which Nanjing Elble seeks attachment relates to the first three invoices Nanjing Elble cites as due and owing from RePET. Each of these invoices was billed at a time when Shubin Zhao served as both CEO and CFO of RePET and as the executive director, legal representative, and sole shareholder of Nanjing Elble. Wang Decl., ¶¶ 3-6, 8-10; Chuang Decl., ¶¶ 4, 16. Although RePET lacks financial documentation relating to these first three of the ten invoices cited by Nanjing Elble, RePET has reason to believe that either Nanjing Elble or Shubin Zhao are in possession of bank statements that would show whether or not RePET made payments to satisfy these invoices. Chuang Decl., ¶ 29.

Despite having the burden to show the probable validity for each element of its claim, Nanjing Elble has provided no evidence that RePET failed to pay for any equipment and machinery. Presumably, Nanjing Elble could easily support its contentions by providing its bank statements listing the financial transactions between Nanjing Elble and RePET. Instead, Nanjing Elble expects the court to simply accept the conclusory statements of ultimate fact found in the Declaration of Shuwei Zhao, a witness who has failed to show he has personal knowledge of any of the cited transactions.

In any case, each of these three initial invoices contains the following payment term providing for both an advance payment before delivery and payment at the time of delivery:

> PAYMENT: 30% by T/T in advance and 50% against copy of B/L, 10% will be paid two weeks after arrival and 10% will be paid 45days after arrival.

Doc. 10-1 at pp. 7, 12, 17, 22, 27, 32, 37, and 42 (Nanjing Elble Exhibits 1-8). Thus, the terms of these invoices provide a condition that 80% of the purchase price had to be paid by the time of delivery. Given Nanjing Elble's claim that it did deliver these goods, it is reasonable to infer that RePET performed the preexisting and concurrent conditions of paying 80% of the purchase price prior to delivery of the Nanjing Elble equipment and machinery. Nanjing Elble has provided no credible evidence to the contrary. Nanjing Elble has not shown the probable validity of its claim that the full amount of these three invoices remains unpaid, and on this basis the Court should deny Nanjing Elble's Writ Application.

9

**C.   Nanjing Elble Improperly Seeks a Turnover Order Directing RePET to Transfer Its Intangible Property to the Levying Officer's Possession.**

Even if there were probable validity to Nanjing Elble's claim, the Writ Application improperly seeks an order directing RePET to transfer intangible property to the levying officer without any legal authority.  The "Attachment Law does not authorize a levy of attachment on an account receivable or a deposit account by taking the account into custody. Nor could it. These are intangible assets incapable of being taken into physical custody." *Pac. Decision Scis. Corp. v. Superior Court*, 121 Cal. App. 4th 1100, 1109 (2004) (citing C.C.P. § 482.080(a)).  The only types of property that may be attached by the levying officer taking the property into custody are: (i) tangible personal property in the possession or under the control of the defendant; (ii) chattel paper; (iii) instruments; (iv) negotiable documents of title; and (v) certain types of securities. *Id.*  "Unlike these tangible assets and documentary evidence of tangible and intangible assets, deposit accounts and accounts receivable are attached by service of the writ on the financial institution or the account debtor, not by taking any property into custody." *Id.*  Accordingly, because Nanjing Elble is seeking attachment of RePET's intangible funds only, the Court must deny Nanjing Elble's Writ Application.

## V.   CONCLUSION

For the reasons set forth above and for any additional reasons raised at oral argument, RePET respectfully requests the Court deny Nanjing Elble's Writ Application.

DATED: November 7, 2016

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By:   /s/ Anthony J. Dain
　　　Anthony J. Dain
　　　Attorneys for Defendant, RePET, Inc., a
　　　California corporation

10

5:16-cv-2030

DOCS 124629-000002/2718661.1